UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

JADE MORTON,

                        Plaintiff,

                                                        **MEMORANDUM & ORDER**
               v.                                                     14-CV-5542 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

------------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Jade Morton ("Morton" or "Plaintiff") commenced this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA's") denial of his claim for Supplemental Security Income ("SSI") benefits. (Dkt. 1.) Defendant, Carolyn Calvin, the Acting Commissioner of Social Security (the "Commissioner") moves for judgment on the pleadings, affirming her final decision. Fed. R. Civ. P. 12(c); (Dkt. 11). For the reasons set forth below, the Court grants the Commissioner's motion.

## BACKGROUND

I. Procedural History

Plaintiff began receiving SSI benefits as a child. (Tr. 14.) Upon turning 18, Plaintiff's continuing eligibility to receive SSI benefits was re-evaluated. (*Id.*) On April 16, 2010, the Commissioner found that Plaintiff would no longer be considered disabled as of April 27, 2010. (Tr. 14, 58-59.) Plaintiff then filed a request for reconsideration, and a hearing was held by a Disability Hearing Officer, who again found Plaintiff not disabled on August 1, 2011. (Tr. 70-74, 85-87.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 22, 2013. (Tr. 25-57.) After the hearing, ALJ Ronald R. Bosch

considered the case *de novo*, and issued a decision on February 7, 2013, finding that Plaintiff's disability had ended on April 27, 2010, and that he had not become disabled again since that date. (Tr. 11-21.) This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on September 10, 2014. (Tr. 1-3, 8-10). Plaintiff then timely filed this action.

II. Administrative Record

A. Background Evidence Provided in Plaintiff's Written Statements

Plaintiff was born in 1992, and reportedly finished the tenth grade. (Tr. 154, 161). In an undated Disability Report, he alleged disability on the basis of asthma, hearing problems, and speech problems. (Tr. 153.) He had worked for two months in the summer of 2008 as a "summer youth" worker handing out flyers, cleaning, and helping children take field trips. (Tr. 155-56.) At the time of that report, Plaintiff was taking albuterol for asthma. (Tr. 157.)

On February 25, 2010, Plaintiff and his grandmother completed a function report. (Tr. 168-76.) They reported that Plaintiff lived with his grandmother in public housing. (Tr. 168.) He attended high school, played in football games after school, and also played video games. (Tr. 169, 172-73.) His grandmother reported that Plaintiff's asthma sometimes woke him up in the middle of the night. (*Id.*) Plaintiff had no difficulty taking care of his personal hygiene and grooming. (Tr. 169-70.) His grandmother cooked meals for him, and he kept his room clean. (Tr. 170-71.) He did not know how to drive, but was able to take public transportation. (Tr. 171.) Plaintiff shopped for his own clothing and shoes, and he was able to handle his own money. (Tr. 172.) He reported having no social activities due to his hearing and speech problems and because he was ashamed of using hearing aids. (Tr. 173.) He had no difficulty with physical activities, such as lifting, standing, walking, sitting, climbing stairs,

reaching, kneeling, or squatting. (*Id.*) He used an asthma inhaler before playing football. (Tr. 174.) Plaintiff reported having no problems paying attention, finishing what he started, or following written instructions; he had held "summer youth jobs with no problems." (*Id.*)

In a second function report, dated June 15, 2010, Plaintiff repeated much of the information contained in his February 25, 2010 report, and stated that his condition remained "the same." (Tr. 182-90.) He additionally reported talking with friends on the computer and playing games together on the weekends; he also went to the gym. (Tr. 188.) In an undated Disability Report-Appeal form, Plaintiff stated that his condition had not changed. (Tr. 163-64.) He further stated that he was "able to manage [his] personal needs and hygiene without assistance", and spent his time watching television. (Tr. 165.)

B. Testimonial Evidence

At the January 22, 2013 administrative hearing, Plaintiff testified that he was 20 years-old and living with his sister. (Tr. 30.) He had completed the eleventh grade in high school, but did not graduate; he planned to take the General Educational Development ("GED") test. (Tr. 31-32.) Plaintiff, who at that time was receiving disability benefits, testified that he continued to be disabled because of his hearing problems and asthma. (Tr. 33.) He had not worked since he was 16 years-old. (Tr. 34.) He could not remember the last time he had seen a doctor for any treatment, and estimated that it was "a year or two" before. (Tr. 35.) He did not know where his hearing aids were anymore, and he was not taking any medication. (Tr. 37-38.) He had not taken any asthma medication since he had played football in high school. (Tr. 38.) According to Plaintiff, he had no limitations on his ability to sit or to stand. (Tr. 39-40.) He thought that he could walk for three hours, and did not know how much he could lift, but thought that he could lift his girlfriend, who weighed 185 pounds. (Tr. 41-42.) Plaintiff was right-handed, and

3

testified that he had no problems with his hands, legs, hips, knees, ankles, feet, or toes. (Tr. 44-45.) He stated that he had no problems with pushing or pulling, bending, squatting, crawling, balancing, climbing ladders or stairs, stooping, or kneeling. (Tr. 45-47.) When asked if he could tolerate exposure to dust, odors, or fumes, Plaintiff stated that he could not. (Tr. 48.) He also testified that he would be physically able to drive a delivery truck, but that he did not have a driver's license. (Tr. 48-49.) According to Plaintiff, he would not be able to work around temperature extremes, vibrations, general noise, heights, or moving machinery. (Tr. 49-51.)

Plaintiff testified that he was able to run errands, dress himself, make himself a sandwich, walk without an assistive device, shop, walk on rough or uneven surfaces, take public transportation by himself, climb stairs, do household chores, exercise, and play video games. (Tr. 51-53.) Members of his family sometimes visited, and he looked after his baby daughter. (Tr. 54-55.) He "sometimes" played football or basketball. (Tr. 55-56.)

C. Medical Evidence Before the ALJ

Pediatric treatment records from 1992 to 1997 showed that Plaintiff had first been treated for an asthma attack in July of 1997. (Tr. 196-213.) He was admitted for five hours in the emergency department of Long Island College Hospital ("LICH") and treated with albuterol, and then discharged. (*Id.*) At a follow-up appointment on August 29, 1997, he still had a cough, mostly at night, and after running and playing. (*Id.*) A chest examination revealed no wheezing and good air entry. (*Id.*) An albuterol nebulizer was prescribed, and Plaintiff's mother was told to follow-up as needed. (Tr. 196-97.)

A physician with an illegible signature provided answers to a questionnaire on March 20, 2010. (Tr. 214-20.) The physician stated that he or she had treated Plaintiff once a month since 1992, and had diagnosed bronchial asthma, a speech problem, and hearing loss. (Tr. 214.) The

4

physician described Plaintiff's current symptoms as shortness of breath, hearing loss, and difficulty with speaking. (*Id.*) Plaintiff had used a Ventolin HFA (albuterol) inhaler and a nebulizer for his asthma, and had difficulty producing speech which could be heard, understood, and sustained. (Tr. 215, 218.) The physician provided no opinion as to Plaintiff's ability to perform physical activities, such as lifting, standing, sitting, or pushing or pulling. (Tr. 219.) The physician enclosed a copy of audiological examination results from October 4, 1999, November 18, 1999, March 26, 2001, and August 29, 2002. (Tr. 221-25.) The results stated that Plaintiff's hearing was either within normal limits ("WNL") or "essentially" within normal limits up to 1000 Hz, with moderate to severe hearing loss at higher frequencies, and "good" or "very good" word recognition. (Tr. 221-23.)

On April 7, 2010, Dr. Marasign, a State agency medical consultant, reviewed Plaintiff's medical records, including the results of an audiological examination performed by a Dr. Shiffman, at the request of the Commissioner. (Tr. 236-39.) Dr. Marasign opined that Plaintiff had "normal hearing and speech discrimination," did not meet or medically equal the requirements of the "Listings," and retained the physical ability to frequently lift and carry up to ten pounds, and occasionally lift and carry up to twenty pounds. (Tr. 238.) He could sit and/or stand for approximately six hours in an eight-hour workday, and would have workplace environmental restrictions. (*Id.*)

On October 31, 2012, Dr. Benjamin Kropsky performed an internal-medicine consultative examination of Plaintiff. (Tr. 247-49.) Plaintiff reported a history of asthma, but said that he had not used his inhaler or nebulizer since he was 18 years old; he had not taken any medication for two years. (Tr. 247.) Plaintiff cleaned daily, did laundry three times a week, and shopped once a month. (*Id.*) He looked after his daughter every day, and showered and dressed

himself daily.  (*Id.*)  On physical examination, Plaintiff had a normal gait and stance, could walk on his heels and toes without difficulty, used no assistive devices, and could squat fully.  (Tr. 248.)  He needed no help changing for the examination or getting on and off the examination table, and could rise from his chair without difficulty.  (*Id.*)  The results of skin, head, face, eye, ear, nose, throat, neck, chest, lung, heart, abdominal, and musculoskeletal examinations were all normal.  (*Id.*)  Plaintiff had full ranges of motion in all of his joints, and his straight-leg-raising tests were negative.  (*Id.*)  His reflexes were normal, and he had full muscle strength with no atrophy.  (Tr. 249.)  Plaintiff had full grip strength, and his hand and finger dexterity were intact.  Dr. Kropsky diagnosed asthma; the prognosis was fair.  (*Id.*)  Based on the results of the examination, Dr. Kropsky opined that Plaintiff should avoid respiratory irritants because of asthma, but had no physical limitations.  (*Id.*)

Also on October 31, 2012, Dr. Sally Morcos completed an intelligence evaluation of Plaintiff.  (Tr. 250-54.)  Plaintiff reported that he had walked ten miles to attend the evaluation and that he was currently living with his sister, and was planning on getting his GED.  (Tr. 250.)  According to Plaintiff, he had only had one summer job in the past, but he was "currently able to work."  (*Id.*)  He was not looking for work, however, because he wanted to return to school.  (*Id.*)  He had completed the eleventh grade and had attended regular-education classes in school.  (*Id.*)  He had no past psychiatric or mental-health treatment, and was not currently taking any medications.  (*Id.*)  Plaintiff reported that he could dress, bathe and groom himself, cook, clean, do laundry, shop, manage money, and take public transportation without assistance.  (Tr. 252.)  He had friends, with whom he sometimes played sports, but generally preferred to stay at home with his sister and daughter.  (*Id.*)  He was closest to his girlfriend, and he spent his day playing video games and watching television.  (*Id.*)

On examination, Dr. Morcos noted that Plaintiff's appearance, posture, and motor behavior were normal. (Tr. 251.) He had mild to moderate difficulty articulating words, but he responded well to testing instructions and recalled and understood them without repetition. (*Id.*) Plaintiff's attitude was cooperative and friendly, although at times he was slightly resistant. (*Id.*) Dr. Morcos characterized Plaintiff's impulsivity as varying between careful and impulsive in his responses to questions. His attention and concentration were "mostly good and age appropriate." (*Id.*) There was no sign of emotional distress. (*Id.*) Dr. Morcos also noted that Plaintiff's level of motivation varied throughout the testing. (*Id.*) Dr. Morcos administered the Wide Range Achievement Test, Fourth Edition ("WRAT-IV"), which indicated the presence of a reading disorder, in that Plaintiff scored at the fifth-grade reading level despite having completed the eleventh grade. (Tr. 251-52.) Dr. Morcos also administered the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV") test, which Plaintiff received IQ scores of 72 in verbal comprehension, 81 in perceptual reasoning, 80 in working memory, 86 in processing speed, and a full-scale IQ score of 75. (*Id.*) Overall, Plaintiff performed in the borderline range of cognitive functioning. (Tr. 252.) In Dr. Morcos's opinion, Plaintiff could follow and understand simple directions, and perform simple tasks independently. (Tr. 252-53.) He could maintain attention and concentration, and keep to a regular schedule. (Tr. 253.) He could make appropriate decisions, relate adequately with others, and perform complex tasks with supervision. (*Id.*) Dr. Morcos said that Plaintiff could not appropriately deal with stress due to cognitive deficits and distractibility. (*Id.*) She further noted that the results of her examination appeared to be consistent with the existence of a cognitive problem, but that it, in itself, did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. (*Id.*) She recommended that Plaintiff receive vocational training. (*Id.*)

7

Dr. Morcos completed a Medical Source Statement of Ability to Do Work-Related Activities (mental) form on November 14, 2012. (Tr. 255-57.) She indicated that Plaintiff would have no limitation in his ability to understand, remember, and carry out simple instructions or make judgments on simple, work-related decisions. (Tr. 255.) He would have mild difficulty remembering complex instructions, and moderate difficulty carrying out complex instructions and making judgments on complex work-related decisions. (*Id.*) He had no difficulty with social interactions, or responding appropriately to usual work situations and changes in a routine work setting. (Tr. 256.) Plaintiff would have no other restrictions. (*Id.*)

D. <u>Evidence Submitted to the Appeals Council After the ALJ Decision</u>

On February 29, 2013, Dr. Ren-Bang Jan wrote a letter stating that he had been seeing Plaintiff since April 16, 1992 for bronchial asthma and hearing loss. (Tr. 265.) Dr. Jan stated that Plaintiff had been treated with Ventolin HFA and an Advair inhaler, and had been prescribed hearing aids. (*Id.*) Audiological testing performed on March 21, 2013, showed that Plaintiff had normal hearing in the 250 to 1000 Hz range, but moderate to severe hearing difficulty in the 1500 to 8000 Hz range. (Tr. 264.) He had good word recognition in the right ear and excellent word recognition in the left ear. (*Id.*) Amplification was recommended. (*Id.*)

*DISCUSSION*

I. <u>Disability Under the Social Security Act</u>

The Act provides that an individual is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify for Social Security Disability benefits, the claimed disability must result "from anatomical, physiological, or psychological

8

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D); *accord Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). The Act's regulations prescribe a five-step analysis for the Commissioner to follow in determining whether a disability benefit claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520(a); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

First, the Commissioner determines whether the claimant currently is engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

If not, the Commissioner proceeds to the second inquiry, which is whether the claimant suffers from a medical impairment, or combination of impairments, that is "severe," meaning that the impairment "significantly limits [claimant's] physical or mental ability to do basic work activities." If the impairment is not severe, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii), (c).

If the impairment is severe, the Commissioner proceeds to the third inquiry, which is whether the impairment meets or equals one of the impairments listed in Appendix 1 to Subpart P of Part 404 of the Act's regulations (the "Listings"). If so, the claimant is presumed disabled and entitled to benefits. 20 C.F.R. § 404.1520(a)(4) (iii).

If not, the Commissioner proceeds to the fourth inquiry, which is whether, despite claimant's severe impairment, he has the "residual functional capacity" ("RFC") to perform past work. 20 C.F.R. § 404.1520(a)(4)(iv). In determining a claimant's RFC, the Commissioner considers all medically determinable impairments, even those that are not "severe." 20 C.F.R. § 404.1545(a). If the claimant's RFC is such that s/he can still perform past work, the claimant is not disabled.

9

If the claimant cannot perform past work, the Commissioner proceeds to the fifth and final inquiry, which is whether, in light of the claimant's RFC, age, education, and work experience, the claimant has the capacity to perform other substantial gainful work which exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant has such capacity, the claimant is not disabled. If not, the claimant is disabled and entitled to benefits. *Id.*

The claimant bears the burden of proving his case at steps one through four; at step five, the burden shifts to the Commissioner to establish that there is substantial gainful work in the national economy that the claimant could perform. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).

II.     The ALJ's Decision

The ALJ noted that the first step of the sequential analysis used for individuals aged 18 or older does not apply when re-determining disability for a benefits recipient who has turned 18. (Tr. 15.) At step two, the ALJ found that Plaintiff had severe impairments, consisting of hearing loss, asthma, and borderline intellectual functioning. (Tr. 16.) *See* 20 C.F.R. § 416.920(c). At step three, the ALJ determined that Plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the impairments in the Listings. (Tr. 16-17.) The ALJ therefore proceeded to determine Plaintiff's RFC, or what he could do despite the limitations caused by his impairments. (Tr. 18-20.) The ALJ found that Plaintiff was able to perform medium work, but was limited to understanding, remembering, and carrying out simple tasks and instructions, and must avoid concentrated exposure to respiratory irritants. (Tr. 18.) At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 20.) Finally, at step five, the ALJ considered Plaintiff's age, education, ability to communicate in English, work experience, and RFC, and found that Plaintiff was able to perform jobs existing in significant numbers in the

national economy. (Tr. 20-21.) Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. 21.)

III. Analysis

A. Step One: "Substantial Gainful Activity"

The ALJ correctly found that the first step of the sequential analysis used for individuals 18 or older does not apply when re-determining disability for a benefit recipient who has turned 18. 20 C.F.R. 416.987(b); *see Cienfuegos v. Comm'r of Soc. Sec.*, No. 13 Civ. 6968, 2015 WL 256134, at *14 (S.D.N.Y. Jan. 21, 2015) ("The ALJ did not determine whether plaintiff had engaged in substantial gainful activity since . . . the onset date of his disability, at step one, because step one is not applied when redetermining disability at age eighteen .").

B. Step Two: Severe Impairments

The ALJ properly found that Plaintiff had the following severe impairments: hearing loss[1], asthma[2], and borderline intellectual functioning[3]. (Tr. 16.) The only severe impairment that Plaintiff cites in his complaint is a "hearing disability."[4] (Dkt. 1.) Because Plaintiff has not responded to the Government's brief, the Court must rely on the allegations made in Plaintiff's complaint. The medical evidence supports the ALJ's finding that Plaintiff has the

---

[1] *See* Tr. 33, 153, 157, 174, 196-215, 247, 249, 265.

[2] *See* Tr. 33, 153, 173, 214, 221-23, 264-65.

[3] *See* Tr. 252, 255.

[4] Plaintiff did state during the 1/22/13 ALJ hearing that he has "real bad asthma", though he fails to identify this ailment as a severe disability in his complaint, and does not provide an opposition to the Government's brief that identifies this medical condition as asthma. Regardless, the ALJ did consider Plaintiff's asthma as a severe impairment, and thus, Plaintiff was not prejudiced in any way by his failure to list his asthma as a severe impairment. (Tr. 16.)

11

aforementioned severe impairments, and there is nothing in the record to suggest that Plaintiff suffered from any other severe impairment that should have been included in the ALJ's analysis.

C. Step Three: RFC Finding

The evidence also supports the ALJ's RFC finding. After reviewing the evidence of record, the ALJ found that Plaintiff had the RFC to perform medium work, consisting of simple tasks and instructions that did not involve concentrated exposure to respiratory irritants. (Tr. 18.) Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. *See* 20 C.F.R. § 416.967(c). In making this RFC determination, the ALJ relied on the medical opinions of the consultative examiners, Drs. Kropsky, Morcos, and Dr. Marasign, and Plaintiff's own testimony.[5] (Tr. 19-20.) These three medical consultants are considered qualified experts in the field of social security disability, and their opinions may serve as substantial evidence in support of the ALJ's RFC finding. *See Lahr v. Colvin*, No. 13 Civ. 0785, 2015 WL 2354368, at *5 (E.D.N.Y. May 15, 2015) ("Pursuant to § 404.1527(e)(2) (i), state agency consultants 'are highly qualified ... experts in Social Security disability evaluation.'"); *Santos-Sanchez v. Astrue*, 723 F. Supp. 2d 630, 638 (S.D.N.Y. 2010) (finding that the ALJ properly gave substantial weight to state agency medical consultant's opinion and his determination regarding Plaintiff's disability).

Dr. Kropsky's opinion supports the RFC finding. After physically examining Plaintiff, Dr. Kropsky noted that Plaintiff had a normal gait and stance, could walk on his heels and toes

---

[5] Significantly, the medical opinions of these three consultative examiners were consistent with that of Plaintiff's only treating physician, Dr. Jan. *See supra* at 8; *see also Isernia v. Colvin*, No. 14 Civ. 2528, 2015 WL 5567113, at *9 (E.D.N.Y. Sept. 22, 2015) (stating that the treating physician rule "mandates that the medical opinion of a claimant's treating physician [be] given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence") (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)).

without difficulty, used no assistive devices, and could squat fully. (Tr. 248.) He needed no help changing for the examination or getting on and off the examination table, and could rise from his chair without difficulty. (*Id.*) The results of skin, head, face, eye, ear, nose, throat, neck, chest, lung, heart, abdominal, and musculoskeletal examinations were all normal. (*Id.*) Plaintiff had full ranges of motion in all his joints, and straight-leg-raising tests were negative. (*Id.*) His reflexes were normal, and he had full muscle strength with no atrophy. (Tr. 249.) Plaintiff had full grip strength, and his hand and finger dexterity was intact. (*Id.*) Based on these findings, Dr. Kropsky opined that Plaintiff would have no physical restrictions other than a need to avoid respiratory irritants because of his history of asthma. (*Id.*) Accordingly, Dr. Kropsky's opinion supports the ALJ's finding that Plaintiff could meet the exertional requirements of medium work.

Dr. Morcos's opinion also supports the ALJ's RFC finding. Dr. Morcos completed a mental RFC evaluation in which she opined that Plaintiff would have no limitation in his ability to understand, remember, and carry out simple instructions or to make judgments on simple, work-related decisions. (Tr. 255.) He would have mild difficulty remembering complex instructions, and moderate difficulty carrying out complex instructions and making judgments on complex work-related decisions. (*Id.*) He had no difficulty with social interactions, or responding appropriately to usual work situations and changes in a routine work setting. (Tr. 256.) According to Dr. Morcos, Plaintiff would have no other restrictions. (*Id.*) Accordingly, Dr. Morcos' opinion supports the ALJ's finding that Plaintiff could perform simple tasks.

In regard to Plaintiff's hearing difficulties, the only impairment identified by Plaintiff in his complaint, the ALJ relied upon the opinion of Dr. Marasign, who had reviewed the results of audiological tests ordered by Dr. Jan, Plaintiff's treating physician, and opined that Plaintiff had

13

speech discrimination scores of 98% in the right ear and 96% in the left ear, and "normal hearing and speech discrimination." (Tr. 19, 238.)

The ALJ also considered Plaintiff's own statements and testimony at the administrative hearing when determining the RFC. A plaintiff's testimony can serve as substantial evidence in support of the Commissioner's decision. *See Salmini v. Comm'r of Social Security*, 371 Fed. App'x 109, 112-13 (2d Cir. 2010) (citing plaintiff's testimony regarding his activities of daily living and his ability to sit, stand, and walk as substantial evidence supporting ALJ's findings). Plaintiff testified that he had no difficulty with sitting, standing, walking, climbing, stairs, reaching, bending, crawling, stooping, kneeling, or squatting. (Tr. 39-41, 45-47, 173.) He testified that he could lift his girlfriend, who weighed 185 pounds. (Tr. 42.) He told Dr. Morcos that he had walked to the consultative examination, a distance of ten miles. (Tr. 250.)

Accordingly, the substantial evidence supports the Commissioner's RFC finding.

D. Step Four: Past Relevant Work

At step four of the sequential analysis, the ALJ correctly found that Plaintiff did not have any past relevant work.[6] (Tr. 20.)

E. Step Five: Substantial Gainful Work in the National Economy

At step five, the ALJ found that Plaintiff was capable of performing jobs existing in substantial numbers in the national economy, and, therefore, was not disabled. (Tr. 20-21.)

---

[6] Although Plaintiff stated that he worked for a summer youth program when he was approximately 14 years-old for about two years, it was proper for the ALJ to not consider this as "past relevant work." (Tr. 33.) "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 416.960(b). However, an individual under the age of 18 who engages in substantial gainful activity cannot be considered to be disabled. 42 U.S.C.A. § 1382c (3)(C)(ii). Here, Plaintiff was considered disabled until age 18, and had received SSI benefits during that period. Accordingly, his employment at the summer youth program does not qualify as substantial gainful activity, and thus, is not considered "past relevant work" under the statute.

In making this determination, the ALJ considered Plaintiff's age, 20, which classified him as a younger individual age 18-49 under the Commissioner's regulations (20 C.F.R. § 416.963); his limited education and ability to communicate in English (20 C.F.R. § 416.964); his lack of past work experience (20 C.F.R. § 416.968); and his RFC for medium work. These factors corresponded to Rule 203.25 of the Medical-Vocational Guidelines (the "Grids") at 20 C.F.R. Part 404, Subpart P, Appendix 2. In the Grids, approximately 2,500 separate sedentary, light, and medium unskilled occupations can be identified, each occupation representing numerous jobs in the national economy. *See* 20 C.F.R. Part 404, Subpart P, App. 2, § 203.00(a). Based on Medical-Vocational Rule 203.25, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. Part 404, Subpart P, App. 2, § 235.25, Table 2.

Generally, the Commissioner meets his burden at the fifth step by referring to the Grids, which provide rules for determining disability that "reflec[t] major functional and vocational patterns." 20 C.F.R. § 404.1569; *Nigino v. Astrue*, No. 04 Civ. 3207, 2009 WL 840382, at *5 (E.D.N.Y. Mar. 30, 2009). However, "although the [G]rids generally direct a disability determination where a claimant complains of exertional impairments only, they will not apply where a claimant suffers solely from non-exertional limitations, and may not provide an exclusive framework for the disability evaluation where a combination of these impairments are in play." *Nigino*, 2009 WL 840382, at *5. Since the applicability of the Grids in these cases depend on the specific facts of the case, the presiding ALJ must consider and address on the record the combined effects of the claimant's exertional and non-exertional limitations and the advisability of additional testimony before resorting to the Grids. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (remanding to the ALJ for a re-evaluation of whether claimant's non-exertional

limitations "significantly diminished" his range of work so as to preclude application of the Grids).

Here, the ALJ found that Plaintiff had the non-exertional limitations of needing to avoid excessive smoke, dust, and other known respiratory irritants, and of having limited ability to understand, remember, and carry out simple tasks and instructions. (Tr. 18.) However, the ALJ found these non-exertional limitations to have little or no effect on the occupational base of unskilled work at the medium exertional level. (Tr. 21.) The Court agrees.[7]

The ALJ was required to determine whether Plaintiff's non-exertional limitations significantly reduced the number of jobs he could do. If they did not, then the ALJ should rely solely on the Grids. If they did, then evidence regarding the jobs Plaintiff could do despite *all* of his limitations, either from a vocational expert or some other evidentiary source, would have been necessary. Here, there was sufficient evidence to support the ALJ's conclusion that Plaintiff's non-exertional limitations were not "significant" and that relying on the Grids was appropriate.

For example, Dr. Morcos opined that Plaintiff could follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, keep to a regular schedule, make appropriate decisions, relate adequately with others, and perform

---

[7] The Court notes that the ALJ incorrectly cited to Social Security Ruling ("SSR") 85-15 when arguing that Plaintiff's non-exertional limitations would have a minimal impact on Plaintiff's occupational base. SSR 85-15 applies only where the claimant suffers *solely* from non-exertional impairments, which is not the case here, since Plaintiff suffers from asthma, an exertional limitation. *Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012) ("SSR 85-15, descriptively titled 'The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments,' does not apply to a case, such as this one, in which the claimant suffers from a combination of exertional and non-exertional impairments.") (citation omitted). This error does not alter the final decision of this Court because the evidence supports the ALJ's finding that Plaintiff's non-exertional limitations would have a limited impact on his occupational base of unskilled medium work.

complex tasks with supervision. (Tr. 252-53.) Dr. Morcos' opinion is bolstered by Plaintiff's independence in his daily life, his tests scores showing borderline intellectual functioning, and his statements that he could work, but wanted to go back to school. Accordingly, the ALJ properly concluded that Plaintiff's non-exertional mental limitations had little effect on the occupational base of unskilled work at the light or medium exertional level.

With respect to Plaintiff's asthma, it is clear from the evidence that his asthma is well-controlled. Plaintiff testified that his asthma is not aggravated unless he is playing sports or running. (*Id.*) Plaintiff stated that the last time he used his Albuterol inhaler and nebulizer was when he was 18 years-old – two years before the ALJ hearing – after playing a game of football. (Tr. 38.) Accordingly, the ALJ was correct to conclude that Plaintiff's restriction with respect to avoiding excessive respiratory irritants would have little impact on his ability to function in most work settings. Based upon the medical evidence in the record, the ALJ correctly concluded that the occupational base associated with unskilled medium work was not significantly diminished as a result of Plaintiff's non-exertional limitations.[8] Accordingly, the ALJ properly relied on the Grids as a framework for determining disability at step five.

*CONCLUSION*

Based on the foregoing, the Court finds that the ALJ applied the correct legal standards and did so in the correct manner, and that the ALJ's conclusions of law and findings of fact are supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is granted in its entirety, and the ALJ's decision is affirmed. The Clerk of Court is respectfully directed to terminate this matter.

---

[8] As discussed *supra*, Plaintiff failed to respond to the government's brief, and thus did not present any additional evidence or arguments to establish that the ALJ should not have relied on the Grids in this instance.

SO ORDERED:


   /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: September 24, 2015
       Brooklyn, New York